United States District Court
Southern District of Texas
**ENTERED**
January 13, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NANCY GARCIA A/K/A NANCY GONZALEZ, | § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-19-1144 |
| WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR ASSET BACKED SECURITIES CORPORATION HOME EQUITY LOAN TRUST 2004-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES, SERIES 2004-HE AND OCWEN LOAN SERVICING, LLC, | § § § § § § § § § § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Nancy Garcia, a/k/a Nancy Gonzalez, sued to delay the foreclosure sale of her home after she defaulted on the mortgage loan she obtained in 2004. She alleged that the loan violated the Texas Constitution, entitling her to a declaratory judgment that the lien on her homestead is invalid, essentially a ruling to quiet title. Garcia also seeks actual damages, statutory damages, treble damages, exemplary damages, and attorneys' fees.

The lender seeks summary judgment. (Docket Entry No. 21). Garcia has not responded. Based on the pleadings, the motion, the record, and the applicable law, the motion is granted. This case is dismissed and a final judgment order is separately entered. The reasons are set out below.

**I.    The Summary Judgment Record**

The defendants attached the following exhibits in support of their motion for summary judgment:

A declaration authenticating the exhibits;

- Exhibit A-1: Home Equity Adjustable Rate Note;
- Exhibit A-2: Deed of Trust;
- Exhibit A-3: Transfer of Lien;
- Exhibit A-4: Texas Equity Loan Affidavit;
- Exhibit A-5: Borrower's and Lender's Acknowledgment as to Fair Market Value;
- Exhibit A-6: Notice Concerning Extensions of Credit;
- Exhibit A-7: Housing and Urban Development Settlement Statement (the "Settlement Statement");
- Exhibit A-8: Uniform Residential Appraisal Report; and
- Exhibit A-9: Homestead Owner's Pre-Closing Fee Disclosure Affidavit.

## II.    The Summary Judgment Standard

"Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (per curiam) (quotation marks omitted); Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020). The moving party "bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact," *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (citation omitted), and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301–02 (5th Cir. 2020) (citation and quotation marks omitted). While the party moving for summary judgment must demonstrate the absence of a genuine and material factual dispute, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., LP*, 864 F.3d 326, 335 (5th Cir. 2017) (per curiam) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)). "[A] fact is 'material' if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (citation and quotation marks omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014) (quotation marks omitted).

When the moving party has met its burden, "the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation and quotation marks omitted). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018), *cert. denied sub. nom. City of Fort Worth, Tex. v. Darden*, 139 S. Ct. 69 (2018).

**III. Analysis**

Garcia's husband, Guadalupe Garcia, executed a Texas Home Equity Adjustable Rate Note in February 2004, in the amount of $89,000.00, payable to Option One Mortgage, a California corporation. Garcia and her coborrowers, Guadalupe Garcia and Rosa Velia Gonzalez, executed a Texas Home Equity Security Instrument, a Deed of Trust that granted a security interest in the property to secure repayment of the Note. The Note and Deed of Trust are collectively referred to as the "Loan." The lender subsequently assigned the Deed of Trust to Wells Fargo Bank, National Association, as Trustee for Asset Backed Securities Corporation Home Equity Loan Trust 2004-HE3, Asset Backed Pass-Through Certificates, Series 2004-H3. PHH Mortgage Corporation d/b/a PHH Mortgage Services, Successor by Merger to Ocwen Loan Servicing, LLC, is the current loan servicer.

At closing, on February 24, 2004, the lender provided the borrowers—and Garcia signed—the following documents among others:

- A Texas Home Equity Affidavit and Agreement containing multiple statements sworn to under oath that the loan complied with, among other provisions, the home equity provisions of the Texas Constitution at issue in this lawsuit;

- The Borrower's and Lender's Acknowledgment as to Fair Market Value;

- Notice Concerning Extension of Credit Defined by Section 50(a)(6), Article XVI, Texas Constitution; and

- The Homestead Owner's Pre-Closing Fee Disclosure Affidavit, containing plaintiff's statement sworn to under oath that the Loan complied with, the same home equity provisions of the Texas Constitution at issue in this lawsuit.

In the Texas Home Equity Affidavit, which Garcia signed contemporaneously with the Loan origination, Garcia made the following representations under oath:

11. The HUD-1 Settlement Statement signed by the Affiants correctly reflects all fees paid by the Affiants in connection with this extension of credit made pursuant to § 50(a)(6), Article 16, of the Texas Constitution.

4

> 12. The Affiants have been provided with a copy of all documents signed by the Affiants.
>
> 15. The principal loan amount for this Texas Equity Loan mortgage, when added to the principal balances of all other liens against the Affiants homestead, does not exceed 80% of the fair market value on the date that this extension of credit is made. The Lender and the Affiants have signed a written acknowledgment as to the fair market value on the date that this extension of credit is made.
>
> 20. The Affiants acknowledge that at least 12 days have passed since the date of the Affiants submission of a loan application to the Lender, or since the date of the Affiants receipt of the Lender's written notice titled Notice Concerning Extensions of Credit, whichever date occurred later.

In the Homestead Owner's Pre-Closing Fee Disclosure Affidavit, which Plaintiff signed contemporaneously with the origination of the Loan, plaintiff made the following representations under oath:

> 2. At least one (1) business day prior to February 24, 2004, Borrower received form the Lender, or from a title insurance company or agent acting as settlement agent for this Loan, a form of HUD-1 Settlement Statement itemizing the actual fees, points, interest, costs, and charges to be charged at closing of this Loan; and

To prevail on a quiet-title claim, the plaintiff must show that she has a right of ownership and that an adverse claim is a cloud on her title. *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The defendants do not dispute Garcia's right of ownership. The only issue as to the quiet-title claim is whether the lien is valid. The loan must comply with Art. XVI, § 50(a)(6) of the Texas Constitution. *See* TEX. CONST. art. XVI, § 50(c) ("No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section . . . .").

Garcia claims that the mortgage lien is invalid because the loan violated certain home-equity provisions of the Texas Constitution.

Garcia's claim that the loan is void because it violates the Texas Constitution's home equity

Provisions fails as a matter of law because her sworn statements in both the Texas Equity Loan Affidavit and the Homestead Owner's Pre-Closing Fee Disclosure Affidavit provide uncontroverted evidence that the loan was constitutionally compliant. Absent circumstances not present here, a borrower's sworn statements at closing are "*conclusive* on issues of compliance with the Texas Constitution's home equity provisions, regardless of later allegations that the statements are false." See *Inge v. Bank of America, N.A.*, No. 4:17-CV-705, 2018 WL 4224918, at *14 (E.D. Tex. July 19, 2018) (emphasis added) ("Various courts have held that a borrower's sworn statements at closing . . . are conclusive on issues of compliance with the Constitution's home equity provisions, regardless of later allegations that the statements are false."); *Siverston v. Citibank, N.A.*, No. 4:18-CV-169, 2019 WL 1274655, at *4 (E.D. Tex. Mar. 20, 2019) (dismissing a quiet-title claim because the "Plaintiff signed an affidavit attesting to the fair market value of the Property and further swearing that such value and the amount of the Loan did no violate the Texas Constitution."); *Reese v. Wells Fargo Bank, N.A.*, No. 3:17-CV-2174-G, 2017 WL 5882406, at *4 (N.D. Tex. Dec. 4, 2017) (granting a motion to dismiss because the affidavit controls); *Erickson v. Wells Fargo Bank, N.A.*, No. 11-CV-722, 2012 WL 4434740, *7–8 (W.D. Tex. Sept. 24, 2012) ("[The plaintiff] was estopped from challenging the validity of the second and third liens, because of the multiple nonhomestead affidavits he gave to the lenders making the loans."); *Amaro v. Bear Stearns Residential Mortg. Corp.*, No. 1:15-CV-74, 2016 WL 6775504, at *3 (S.D. Tex. Mar. 31, 2016) (dismissing declaratory judgment claim based on an alleged violation of Texas Constitution in a Texas home equity affidavit and agreement).

    Garcia signed, under oath, the Texas Equity Loan Affidavit, which stated that: (1) she did not pay any fee or charge not disclosed in the Settlement Statement, including that the fees did not exceed 3% of the principal amount; (2) she was provided with a copy of all documents that she

signed at the closing; (3) the principal amount did not exceed 80% of the property fair market value and the lenders and borrowers each signed a written acknowledgment as to the fair market value of the property on the date the loan was made; and (5) she received notice that the loan was governed by the Texas Constitution, Article XVI, § 50(a)(6) at least 12 days before the closing. Garcia also signed, under oath, the Homestead Owner's Pre-Closing Fee Disclosure Affidavit, which stated that she was provided with a final itemized disclosure of the actual fees, points, interest, costs, and charges that would be charged at closing at least one business day before the closing. Given the record, those sworn statements establish compliance with these home equity provisions of the Texas Constitution. The claims for violations of the Texas Constitution fail, and with it, the claim for relief and to quiet title.

### A.     Section 50(a)(6)(B)

Garcia claims that the loan violated Art. XVI § 50(a)(6)(B) of the Texas Constitution because the principal amount exceeded 80% of the property's fair market value when the loan was executed. The lender's evidence shows that when the loan originated, the fair market value of the property was $135,000.00, and the principal value of the loan was $89,000.00, less than 80% of the property's fair market value. The record shows no violations of § 50(a)(6)(B).

### B.     Section 50(a)(6)(E)

Garcia alleges that the loan violated § 50(a)(6)(E) of the Texas Constitution because the fees exceeded, in the aggregate, 3% of the original principal amount. *See* TEX. CONST. art. XVI § 50(a)(6)(E). The Settlement Statement shows that the fees did not exceed 3% of the original principal amount. After accounting for a lender credit of $3,560.00, the total fees were $1,098.75, less than 3% of the $89,000.00 principal loan amount. Under Texas law the following items on the Settlement Statement are not included in the fees: loan discount, appraisal fee, property taxes,

and lender's title insurance. *See* TEX. ADMIN. CODE § 153.5; TEX. CONST. art. XVI § 50(a)(6)(E)(i), (iii). The record shows no violation of § 50(a)(6)(E).

### C. Section 50(a)(6)(M)(ii)

Garcia alleges that the lender violated Art. XVI, 50(a)(6)(M)(ii), of the Texas Constitution by failing to timely provide a final itemized Settlement Statement. *See* TEX. CONST. art. XVI § 50(a)(M)(ii). Garcia signed the last page of the Settlement Statement, dated February 23, 2004. That statement included an acknowledgment that she received a copy of the final itemized Settlement Statement at least one day before closing. The record shows no violation of § 50(a)(6)(M)(ii).

### D. Section 50(a)(Q)(v)

Garcia alleged that the lenders violated § 50(a)(6)(Q)(v) by failing to provide a copy of all loan documents signed at closing. In the Texas Equity Loan Affidavit, Garcia swore that she was provided with a copy of these documents. The record shows no violation of § 50(a)(6)(Q)(v).

### E. Section 50(a)(6)(Q(ix)

Garcia alleges that the lenders violated § 50(a)(6)(Q)(ix) by failing to provide an acknowledgment of fair market value signed by the borrowers and the lenders. *See* TEX. CONST. art. XVI § 50(a)(6)(Q)(ix). The summary judgment evidence includes a Borrower's and Lender's Acknowledgment of Fair Market Value, which was signed by both the lender and the borrowers at the closing. Garcia signed documents stating, under oath, that she received this document as well as the other documents signed at closing. The record shows no violation of § 50(a)(6)(Q)(ix).

### F. Section 50(a)(6)(M)(i)

Garcia claims the lenders violated § 50(a)(6)(M)(i), which requires that a home equity loan must not be closed before "the 12th day after the later of the date that the owner of the homestead

8

submits a loan application to the lender for the extension of credit or the date that the lender provides the owner a copy of the ['Notice Concerning Extensions of Credit Defined by Section 50(a)(6), Article XVI, Texas Constitution']." TEX. CONST. art. XVI § 50(a)(6)(M)(i); *see also id* § 50(a)(g). Garcia claims that the lenders did not provide timely notice.

The summary judgment evidence shows that on January 20, 2004—more than 12 days before the loan closed on February 24, 2004—the lenders provided Garcia with the notice. The notice itself reflects Garcia's signature and is dated January 20, 2004. The record shows no violation of § 50(a)(6)(M)(i).

### G. Attorney's Fees

Garcia's claims to quiet title or remove the cloud from the title by having the lien invalidated do not permit her to recover fees. *Green Int'l., v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). And because she has failed to show a basis for relief, any fee claim would fail.

## V. Conclusion

The defendants' summary judgment motion, (Docket Entry No. 24), is granted. Garcia's claims are dismissed, with prejudice.

SIGNED on January 13, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge